**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | | |
|---|---|---|
| DALE FOSTER, DARLA SOLOMON and DAVID LEITHREN, individually and on behalf of all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:22-CV-1581 (GLR) |
| LOWER, LLC, | ) ) ) | |
| Defendant. | ) ) | |
| EDGAR WOLFF, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:22-cv-02003-JKB |
| LOWER, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iv

I.    **INTRODUCTION** ................................................................................................ 1

II.  **CASE SUMMARY** ............................................................................................... 1

    a. Background ................................................................................................... 1

    b. Procedural Posture ....................................................................................... 2

    c. Settlement Negotiations ............................................................................... 3

III.  **THE PROPOSED SETTLEMENT** ................................................................. 4

    a. Settlement Benefits ...................................................................................... 4

        i.  Reimbursement for Lost Time and Ordinary Expenses ................... 4

        ii.  Reimbursement for Extraordinary Expenses................................... 5

        iii.  Alternative Cash Payment ............................................................... 5

        iv.  Monitoring and Identity Theft Protections ..................................... 5

    b. Notice .......................................................................................................... 6

    c. Claims, Exclusions and Objection Procedures ........................................... 7

        i.  Claims.............................................................................................. 7

        ii.  Exclusions ....................................................................................... 7

        iii.  Objections........................................................................................ 7

    d. Service Award, Fees, and Costs................................................................... 8

    e. Release ........................................................................................................ 9

IV.  **LEGAL STANDARD** ........................................................................................ 9

V.   **ARGUMENT** ..................................................................................................... 10

    a. The Settlement Class Should be Preliminarily Certified. .......................... 10

        i.  The Proposed Class is Sufficiently Numerous ............................... 11

        ii.  Questions of Law and Fact Are Common to the Class ................... 12

iii.    Plaintiffs' Claims and Defenses are Typical of the Class .............................................. 14

iv.    Plaintiffs' Counsel Will Provide Fair and Adequate Representation of the Class......... 14

v.    The Rule 23(b)(3) Requirements Are Satisfied................................................................. 14

B. The Terms of the Settlement are Fair, Reasonable, and Adequate and
   Warrant Preliminary Approval Under Rule 23(a)(4)........................................................ 17

i.    The Settlement is Adequate and Reasonable ................................................................. 18

ii.    The Settlement is Fair. ...................................................................................................... 20

C. The Proposed Claims Administrator Will Provide Adequate Notice. ................................. 20

D. The Court Should Appoint Class Counsel. ............................................................................ 22

VI.    CONCLUSION ....................................................................................................................... 23

## TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591, 620 (1997) ................................................................................................ passim

*Berry v. Schulman,*
    807 F.3d 600 (4th Cir.2015).............................................................................................. 9

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
    155 F.3d 331, 340 (4th Cir. 1998)................................................................................... 14

*Brown v. Transurban USA, Inc.,*
    318 F.R.D. 560, 569 (E.D. Va. 2016). ........................................................................... 15

*Clark v. Experian Information Solutions, Inc.,*
    2004 WL 256433 (D.S.C. 2004) ..................................................................................... 18

*Decohen v. Abbasi, LLC,*
    299 F.R.D. 469, 479 (D. Md. 2014)................................................................................ 22

*Deiter v. Microsoft Corp.,*
    436 F.3d 461, 466 (4th Cir. 2006)................................................................................... 14

*Domonoske v. Bank of America, N.A.,*
    790 F. Supp. 2d 466 (W.D. Va. 2011) ........................................................................... 22

*Ealy v. Pinkerton Gov't Servs.,*
    514 F. App'x 299, 305 (4thCir. 2013) ............................................................................ 15

*Eisen v. Carlisle and Jacquelin,*
    417 U.S. 156, 173 (1974) ................................................................................................ 21

*Flinn v. FMC Corp.,*
    528 F.2d 1169 (4th Cir.1975).......................................................................................... 9

*Foster v. Lower LLC,*
    Case No. 1:22-cv-1581 (D. Md.)................................................................................... 2, 8

*Gordon v. Chipotle Mexican Grill, Inc.,*
    No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ................ 19

*Gray v. Hearst Commc'ns, Inc.,*
    444 F. App'x 698, 701–02 (4th Cir. 2011); .............................................................. 15

*Hammond v. The Bank of N.Y. Mellon Corp.,*
    2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010)............................................... 19

*Hapka v. CareCentrix, Inc.*,
    2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018)...................................................... 15

*Horton v. Merrill Lynch, Pierce, Fenner & Smith*,
    855 F. Supp. 825, 827 (E.D.N.C. 1994) ........................................................... 10, 17

*In re Anthem. Inc. Data Breach Litig.*,
    327 F.R.D. 299, 315-16 (N.D. Cal. 2018)............................................... 10, 12, 15, 16

*In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*,
    No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) .......................... 13

*In re Equifax Customer Data Dec. Breach Litig.*,
    No. 1:17-md-2800-TWT, 2020 WL 256132, at *14 (N.D. Ga. March 17. 2020); ............ 10, 11

*In re Equifax,* 2020 WL 256132 *11 ........................................................ 12, 14, 15, 16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013). ......................................................................... 19

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ......................................................... 11, 13, 16

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir.1991)....................................................................... 9, 17, 18, 20

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654, 663 (E.D. Va. 2001) ............................................................... 17

*In re Mid–Atlantic Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D.Md.1983) ................................................................... 9, 10, 17

*In re Montgomery Cty. Real Estate Antitrust Litig.*,
    83 F.R.D. 305 (D.Md.1979)........................................................................... 9

*In re Mutual Funds Inv. Litigation,*
    No. MDL 1586, 2010 WL 2077972, *6 (D. Md. May 19, 2010) .......................... 22

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    309 F.R.D. 482 (D. Minn. 2015);................................................................... 11

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016)......................................... 12, 16

*In re Titanium Dioxide Antitrust Litig.*,
    284 F.R.D. 328, 337 (D. Md. 2012) ................................................................ 11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306, 314 (1950) ......................................................................... 21

*Peoples v. Wendover Funding, Inc.,*
    179 F.R.D. 492, 497 (D. Md. 1998) ..................................................................... 11

*S.C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419, 1423 (D.S.C. 1990) ............................................................... 10

*S.C. Nat'l Bank*,
    139 F.R.D. at 339 ......................................................................................... 17, 20

*Shenker v. Polage*,
    226 Md. App. 670, 683 (2016) ............................................................................ 9

*Soutter v. Equifax Info. Servs., LLC*,
    307 F.R.D 183, 214 (E.D. Va. 2015) ................................................................... 15

*Stillmock v. Weis Markets, Inc*.,
    385 F. App'x 267, 273 (4th Cir. 2010) ............................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 349-350 (2011) ............................................................................ 12

## OTHER AUTHORITIS

7A Charles Wright, Arthur Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE §
    1779 (3d ed. 2005) ........................................................................................... 16

7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2006) .... 21

*Manual for Complex Litigation (Fourth)* ("MCL"),
    § 21.632 (4th ed. 2004) .................................................................................. 9, 10

*Manual for Complex Litigation*,
    Sec. 30.41 (3rd Ed. 1995) ................................................................................. 10

## RULES

Fed. R. Civ. P. 23 ................................................................................................. 9

Fed. R. Civ. P. 23(a) ........................................................................................... 11

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 14

Fed. R. Civ. P. 23(b)(3) ....................................................................... 11, 14, 15, 17

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 21

Fed. R. Civ. P. 23(e) ............................................................................................ 9

Fed. R. Civ. P. 23(e)(2) ........................................................................................ 9

Fed. R. Civ. P. 23(g)(1)(A)(i–iv) ......................................................................... 22

Fed. R. Civ. P. 23(g)(1)(B) .................................................................................. 22

## I.    INTRODUCTION

This case arises from a data incident that Plaintiffs Dale Foster, Darla Solomon, David Leithren, and Edgar Wolff allege compromised the security of their personal identifiable information ("PII"). After extensive arms'-length negotiations, the Parties have negotiated a non-reversionary common fund Settlement that provides significant relief for Representative Plaintiffs and the Settlement Class. Because the Settlement is fair, reasonable, and adequate, it should be preliminarily approved by the Court and notice should be provided to Settlement Class Members.

## II.    CASE SUMMARY

### a.    Background

Defendant Lower, LLC ("Lower" or "Defendant") is a financial technology business that assists consumers in finding the lowest rates for mortgage loans and insurance products through its website https://www.lower.com/finance (last accessed June 15, 2023) and the Lower smartphone application. *Foster*, ECF 18, ¶ 1; *see generally Wolff*, ECF 1 (making similar allegations). Plaintiffs and Class Members were consumers of Defendant whose PII was required to be provided, and was in fact provided, to Defendant in order to receive mortgage loan and information with Defendant. *Foster*, ECF 1, ¶¶ 31,123,131. On December 14, 2021, Defendant discovered unusual activity in its systems and subsequently determined, on December 17, 2021, that an unauthorized person had accessed Defendant's systems and exfiltrated consumers' data between December 10, 2021, and December 14, 2021. *Id*. ¶¶10,14,18,52.

After Lower's initial discovery of the unauthorized access to its systems, Lower commissioned computer forensic specialists to conduct an investigation to determine the nature and scope of the event. *Id*. ¶ 26.  The investigation revealed that, in addition to the unauthorized access between December 10, 2021, and December 14, 2021, there was also evidence of suspicious

activity in its employee email accounts between September 2, 2021, and December 16, 2021. *Id.*
*Id*. ¶10. Additionally, Lower admitted that it was not until April 28, 2022, that Lower was able to
identify that consumers' names and social security numbers had been impacted by the data breach.
*Id*. Plaintiffs and the Class did not begin receiving notice until May 27, 2022.

### b. Procedural Posture

Upon receiving notice that their PII had been impacted by the Data Incident, Representative
Plaintiffs retained proposed Class Counsel. On June 27, 2022, after counsel completed an internal
investigation, Plaintiff Foster filed his class action complaint alleging three separate counts against
Defendant: negligence; unjust enrichment; and negligence *per se*. That case, styled as *Foster v.*
*Lower LLC*, Case No. 1:22-cv-1581 (D. Md.), alleged that Lower failed to adequately safeguard
its customers' electronically stored private information in connection with the data security
incident announced by Lower on May 27, 2022 ("Data Incident").  On August 22, 2022, Lower
filed a Motion to Dismiss Plaintiff Foster's Complaint. In response, on September 7, 2022, Plaintiff
Foster filed an amended complaint adding Darla Solomon and David Leithren as Plaintiffs. ECF
18. The amended complaint alleges that same three counts against Defendant as well as a violation
of Maryland's consumer protection act ("MCPA").

In the Amended Complaint Plaintiffs sought certification of a class including "All persons
Lower LLC identified as being among those individuals impacted by the Data Breach, including
all who were sent a notice of the Data Breach." Plaintiffs also sought certification of a Florida
subclass and a Maryland subclass. Finally, Plaintiffs sought an award of actual, compensatory, and
statutory damages as well as attorneys' fees and costs, and any such further relief as may be
deemed just and proper. *Id.* at Prayer for Relief.

On August 11, 2023, Plaintiff Edgar Wolff filed a separate Class Action Complaint against the Defendant. Plaintiff Wolff's complaint alleges claims for damages and equitable relief based on theories of negligence, negligence *per se*, breach of implied contract, unjust enrichment, invasion of privacy by intrusion, and breach of fiduciary duty. *Wolff*, ECF 1. Because the claims from both the *Foster* and *Wolff* cases stem from the same Data Incident and the Plaintiffs from both lawsuits fall under the same putative national class definition ("All persons whose Private Information was maintained on Defendant Lower LLC's computer systems that were compromised in Lower's September-December 2021 Data Breach") the Parties agreed to discuss the possibility of settling both cases jointly. Joint Counsel Dec., ¶ 7.

In January 2023, the parties requested a stay of all case deadlines to allow them to participate in private mediation. *Foster*, ECF 25; *Wolff*, ECF 18. The Court entered the stay on January 30, 2023. *Foster*, ECF 26; *Wolff*, ECF 19.

### c. Settlement Negotiations

On May 15, 2023, the parties participated in a full day mediation of this matter with the Hon. Wayne Andersen (Ret.) of JAMS. Prior to mediation, the parties exchanged information about the number of breach victims, the types of PII compromised in the breach, and Lower's investigation of, and response to, the Data Incident. After multiple rounds of arms'-length negotiations, the parties reached agreement on the principal terms of the Settlement, with the assistance of Judge Andersen. Over the next weeks, the Parties continued negotiations and drafting the particular terms of the Settlement Agreement and associated exhibits. The Settlement Agreement and various exhibits ("SA") was finalized and signed on July 17, 2023.

Plaintiffs and their counsel believe that in consideration of all the circumstances, and after prolonged and serious arms' length negotiations with Lower, the proposed settlement embodied in

the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of all members of the Settlement Class. The Settlement Agreement is attached to this memorandum as Exhibit 1.

## III.    THE PROPOSED SETTLEMENT

The Settlement negotiated on behalf of the class establishes a $1,425,000 non-reversionary settlement fund, which will be used to pay for benefits to the Settlement Class, notice and administration costs, Plaintiffs' service awards, and attorneys' fees and costs. Specifically, the Settlement provides for five categories of relief for Settlement Class Members: (1) reimbursement for lost time (up to 10 hours at $20 per hour) and ordinary out-of-pocket expenses up to $2,500; (2) reimbursement for extraordinary losses up to $7,500; (3) two-years of credit monitoring through all three major credit bureaus as well as at least $1 million in fraud protection; and (4) a $100 cash payment as an alternative to the other cash compensation offered above. The Settlement Class includes approximately 85,958 individuals and is defined as "All persons who were sent a notice of the Data Incident by Lower, LLC identifying them as individuals potentially affected in the Data Incident".

Specifically excluded from the Settlement Class are: (i) Lower's officers, directors and trustees; and (ii) the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Lower. Also excluded from the Settlement Class are members of the judiciary to whom this case is assigned, their families and members of their staff, and the mediator.

### a.  Settlement Benefits

#### i.  Reimbursement for Lost Time and Ordinary Expenses

The first category of benefits provides Settlement Class Members who submit a valid claim may up to $2,500 for reimbursement of ordinary expenses incurred as a result of the Data Incident, such as: bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; fees for credit reports, credit monitoring, or other identity theft insurance product purchased between September 2021, and the Claims Deadline. Additionally, as part of the $2,500 ordinary expense reimbursement, Settlement Class Members who submit a valid claim may receive compensation at $20 per hour for up to ten (10) hours spent dealing with the Data Incident. Claims of lost time only need an attestation that they spent the claimed time responding to issues raised by the Data Incident.

ii.    Reimbursement for Extraordinary Expenses

The second category of benefits allows Settlement Class Members who submit a valid claim to collect up to $7,500.00 per person in compensation to each Class Member who was the victim of documented identity theft and associated losses caused by the Data Incident that does not fall within the Ordinary Expenses category.

iii.    Alternative Cash Payment

In lieu of the other cash benefits, Settlement Class Members may claim a cash payment of $100.  The amount of this payment shall be reduced or increased on a pro rata basis depending upon the number of claims filed.

iv.    Monitoring and Identity Theft Protections

Settlement Class Members can elect to enroll in credit monitoring services for two years through all three credit bureaus along with at least $1 million in fraud protection.

### b. Notice

The Parties agreed to use Angeion Group as the Claims and Settlement Administrator. Within 45-days of entry of the Preliminary Approval Order ("Notice Date"), Notice shall be provided to Settlement Class Members via email or direct mail. The postcard notice (or Short Notice) is clear and concise, and provides information about the Settlement as well as the sources Settlement Class Members can go to for additional information. *See* SA, Ex. A. In addition to the individual direct notice provided, the Claims Administrator will establish and maintain a dedicated settlement website that will contain broad information including but not limited to copies of the Complaint filed in this matter, a copy of Long Form Notice, Short Form Notice, FAQs, as well as other relevant court documents. The Long Form Notice, available at the Settlement Website, is the detailed, long form notice that will be posted on the Settlement Website that will include robust details about the Settlement. *See* SA, Ex. B.

In addition to the individual direct notice provided, the Claims Administrator will establish and maintain a dedicated settlement website that will be updated throughout the claims period with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement and other relevant court documents. The Long Form Notice, available at the Settlement Website, explains the terms of the Settlement Agreement, provides contact information for Proposed Class Counsel, and explains the different options available. *See* SA, Ex. B. The Claims Administrator will also establish and maintain a toll-free help line to call with settlement-related inquiries and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries in a timely manner.

The cost of providing notice and claims administration will be paid from the Settlement Fund.

### c. Claims, Exclusions and Objection Procedures

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object.

#### i. Claims

Class Members will have ninety (90) days from the completion of Notice to complete and submit a claim to the Claims Administrator. The Claim Form, attached to the Settlement Agreement at Exhibit C, is written in plain language to facilitate Settlement Class Members' ease in completing it. *See* SA, Ex. C. Claim Forms can be submitted either online through the Settlement Website, or via U.S. Mail to the PO Box maintained by the Settlement Administrator.

#### ii. Exclusions

Settlement Class Members will have up to and including sixty (60) days following the Notice Date to exclude themselves from the Settlement. To be considered valid, the request for exclusion must be timely mailed to the Post Office box established by the Claims Administrator and must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion," a comparable statement that the individual does not wish to participate in the Settlement, or some other clear manifestation of the intent to opt-out of the Settlement in the written communication. Any Member of the Settlement Class who elects to be excluded in a timely manner shall not be bound by the Settlement.

#### iii. Objections

Settlement Class Members will also have up to and including sixty (60) days following the Notice Date to object to the Settlement. Similar to the timing of the claims process, the timing with

regard to objections is structured to give Settlement Class Members sufficient time to review the Settlement documents.

Any Settlement Class Member who wishes to object shall timely file with the Court and mails to Class Counsel and Lower's counsel written objections that include: (1) the case name and number: *Foster et al. v. Lower, LLC, 1:22-CV-1581-GLR,* pending in the United States District Court for the District of Maryland (Baltimore); (2) the Settlement Class Member's full name, address, telephone number and email address (if any); (3) the full name, address, telephone number, and email address of the objector's counsel (if the objector is represented by counsel); (4) whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and also state with specificity the grounds for the objection; (5) whether the objector or counsel on the objector's behalf will personally appear and/or testify at the Final Approval Hearing; and (6) provide the objector's signature and the signature of the objector's duly authorized counsel or other duly authorized representative. Completed objections must also be submitted via postal mail to the Settlement Administrator.

Any Settlement Class Member who fails to object in this manner will be deemed to have waived any objections.

### d. Service Award, Fees, and Costs

The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service award to Representative Plaintiffs until after the substantive terms of the settlement had been agreed upon, other than that Defendant would pay reasonable attorneys' fees, costs, expenses, and an service award to Representative Plaintiffs as may be agreed to by Defendant and Proposed Settlement Class Counsel and/or as ordered by the Court.

8

The Settlement Agreement calls for a reasonable service award to Plaintiffs in the amount of $2,500 per Plaintiff, for a total payment of $10,000. The attorneys' fees and expenses sought will not exceed 33.3% of the Settlement Fund, or $475,000, subject to approval of the Court. The service award, as well as attorneys' fees and costs, were negotiated after the total amount of the Settlement Fund was established and will be paid from the non-reversionary Settlement Fund.

### e. Release

The release in this case is tailored to the claims that have been plead or could have been plead relating to the specific Data Incident. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Defendant, related to the Data Incident.

## IV.    LEGAL STANDARD

Class action settlements must be approved by the court pursuant to Rule 23 of the Federal Rule of Civil Procedure. "Federal Rule 23(e) has been applied and analyzed thoroughly in reported decisions of Maryland's federal district courts and the Fourth Circuit, as well as nationally." *Shenker v. Polage*, 226 Md. App. 670, 683 (2016), citing to *Berry v. Schulman*, 807 F.3d 600 (4th Cir.2015); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir.1991); *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir.1975); *In re Mid–Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D.Md.1983); *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305 (D.Md.1979).

The primary concern for a court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube*, 927 F.2d at 158. The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *Manual for Complex Litigation (Fourth)* ("MCL"), § 21.632 (4th ed. 2004).  The approval process involves

two steps. At the first, or preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval" and warrants notice being issued to the class. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota*, 564 F. Supp. at 1384). This first step involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.*; *see also See Manual for Complex Litigation*, Sec. 30.41 (3rd Ed. 1995). It is only apparent after a Court has preliminarily approved a settlement, and notice has been provided to the Class, that litigating the same claims of 181,300 persons through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See In re Equifax Customer Data Dec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *14 (N.D. Ga. March 17. 2020); *In re Anthem. Inc. Data Breach Litig.*, 327 F.R.D. 299, 315-16 (N.D. Cal. 2018).

Settlement by compromise is a part of strong judicial policy in the Fourth Circuit favoring resolution prior to trial. *See e.g., S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("[t]he voluntary resolution of litigation through settlement is strongly favored by the courts"). Settlement spares litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources. *Id*. at 1423.

## V.    ARGUMENT

### a.  The Settlement Class Should be Preliminarily Certified.

Prior to granting preliminary approval of a proposed settlement, the Court should first determine the proposed Settlement Class is appropriate for certification. *See Manual for Complex Litigation.,* Sec. 21.632 (4th Ed. 2013)*; Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation

requirements of Rule 23(a). Fed. R. Civ. P. 23(a). Additionally, the Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claim. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16. When considering a request for a settlement-only class certification, a district court need not inquire as to the manageability of a case at trial, as the proposal is that there be no trial. *Id.* at 620.

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax*. *See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019); *see, also, e.g., In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case meets all the standards for certification under Rule 23 and should be similarly certified.

### i. The Proposed Class is Sufficiently Numerous

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members is impracticable. While whether the numerosity requirement is met depends on a court's practical judgment on a given case. Here the 181,300 individuals are clearly so numerous as to render joinder impracticable. *See Peoples v. Wendover Funding, Inc.,* 179 F.R.D. 492, 497 (D. Md. 1998) (noting "courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement"); *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012) (finding a class of 700 satisfied the numerosity requirement). Thus, the Class here is sufficiently numerous to warrant certification under Rule 23(a)(1).

ii.  Questions of Law and Fact Are Common to the Class

Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that all their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350 "Even a single common question will do." *Id*. at 359 (internal quotations omitted).

Courts have previously addressed this requirement in the context of data breach class actions and found it readily satisfied. *In re Equifax,* 2020 WL 256132 *11 (citing *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016)) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement); *In re Anthem*, 327 F.R.D. at 308 (noting that the data breach complaint contains a common contention capable of class-wide resolution—one type of injury claimed to have been inflicted by one actor in violation of one legal norm).

Here also, the commonality requirement is readily satisfied, as the Plaintiffs and Settlement Class Members all have common questions of law and fact that arise out of the same event—the Data Incident discovered in June 2021. Specifically, Plaintiffs have alleged that the following questions of law and fact are common to the class:

- Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' PII;
- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;
- Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

- Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

- Whether Defendant owed a duty to Plaintiffs and Class Members to safeguard their PII;

- Whether Defendant breached its duty to Plaintiffs and Class Members to safeguard their PII;

- Whether computer hackers obtained Plaintiffs' and Class Members' PII in the Data Breach;

- Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

- Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

- Whether Defendant's conduct was negligent;

- Whether Defendant's conduct was per se negligent, and;

- Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.[1]

Like in other data breach cases, these common issues all center on Defendant's conduct, or other facts and law applicable to all class members, thus satisfying the commonality requirement. *See, e.g., In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys*, 851 F. Supp. 2d at 1059 ("Answering the factual and legal questions about Heartland's conduct will assist in reaching class wide resolution.") Thus, the element of commonality is readily satisfied.

---

[1] *See* ECF 18 at157.

13

### iii.   Plaintiffs' Claims and Defenses are Typical of the Class

Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class . . ." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (citation and quotations omitted). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67.

This requirement is readily satisfied in data breach cases like this one. The Settlement Class Representatives' claims are typical of other Settlement Class Members because they arise from the same Data Breach and involve the same overarching legal theories. *See, e.g., Equifax*, 2020 WL 256132, at *12.

### iv.   Plaintiffs' Counsel Will Provide Fair and Adequate Representation of the Class

"The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Settlement Class Representatives do not have any interests antagonistic to other class members and have retained lawyers who are abundantly qualified and experienced, satisfying the adequacy requirement. Joint Decl. ¶¶ 22-40, Exs. A-B.

### v.   The Rule 23(b)(3) Requirements Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One

part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Brown v. Transurban USA, Inc*., 318 F.R.D. 560, 569 (E.D. Va. 2016).

Predominance: Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry measures the relative weight of the common questions as against individual ones. *Id.* at 624. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs*., 514 F. App'x 299, 305 (4thCir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc*., 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc*., 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Lower. *See, e.g., Equifax*, 2020 WL 256132, at *13; *In re Anthem*, 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem*, 327 F.R.D. at 312. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec.*

*Breach Litig.*, 2016 WL 6902351, at \*2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Superiority: "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . ." 7A Charles Wright, Arthur Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1779 (3d ed. 2005). Litigating the same claims of over 114,000 persons through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See In re Equifax*, 2020 WL 256132, at \*14; *In re Anthem*, 327 F.R.D. at 315-16.

Additionally, the proposed Settlement will give the parties the benefit of finality, and because this case has now been settled pending Court approval, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case …would present intractable management problems…"). Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating hundreds of thousands of individual data breach cases arising out of the same Data Incident.

The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these

issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

### B. The Terms of the Settlement are Fair, Reasonable, and Adequate and Warrant Preliminary Approval Under Rule 23(a)(4).

After determining that certification of the Settlement Class is appropriate, the Court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice to the class. The primary concern in class action settlement approval is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991). Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). However, "there is a strong initial presumption that the compromise is fair and reasonable." *S.C. Nat'l Bank*, 139 F.R.D. at 339.

In the Fourth Circuit, there are two parts to the analysis in determining whether to approve a class action settlement: (1) adequacy—whether the Class recovery is adequate in comparison to what the class gives up; and (2) fairness—whether the procedure by which the settlement was negotiated was proper. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158-159.

While Courts complete this analysis after notice has been issued to the class and a Final Approval hearing has been held, at the preliminary approval stage the Court need only find that the settlement is within "the range of possible approval." *Horton*, 855 F. Supp. at 827 (citing *In Re Mid-Atlantic Toyota*, 564 F. Supp. at 1384). Here, the Settlement is within the range of preliminary approval and should be approved.

i.    <u>The Settlement is Adequate and Reasonable</u>

In analyzing the adequacy of a proposed settlement, the Court can consider such factors as: (1) the relative strength of the case on the merits, (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, (5) and the degree of opposition to the proposed settlement. *See In re Jiffy Lube*, 927 F.2d at 159; *Clark v. Experian Information Solutions, Inc.*, 2004 WL 256433 (D.S.C. 2004). While the Defendant's solvency has not been put at issue, and the degree of opposition to the Settlement is best measured *after* notice has issued to the class, Plaintiffs will examine the first three *Jiffy Lube* factors here.

The first three *Jiffy Lube* Factors are closely related, and weigh in favor of settlement approval. The Settlement provides Settlement Class Members real relief for harms and protection from risk of future harm. The significant Settlement Fund established here ensures that Settlement Class Members can receive substantial relief by filing a claim. Settlement Class Members who submit valid claims are eligible to receive up to $2,500 in reimbursements for ordinary expenses incurred as a result of the Data Incident, including reimbursement at a rate of $20 per hour for up to ten hours spent addressing issues pertaining to the Data Incident. SA ¶ 64(i)(c). Additionally, Settlement Class Members can make a claim for up to $7,500 for reimbursement of extraordinary losses. *Id.* ¶ IV (ii). Finally, Class Members may choose to make a claim for a $100 alternative cash payment in lieu of the other cash compensation listed earlier. *Id.* ¶¶ 13, 64(iv). Additionally, Settlement Class Members are also eligible to claim two years (24 months) of credit monitoring and identity protection services. *Id.* ¶ 64(iii).

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). While Plaintiffs strongly believe in the merits of their case, they also understand that Lower will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiffs to the risks inherent in trying to achieve and maintain class certification, and prove liability. In fact, should litigation continue, Plaintiffs would have to immediately survive a fully briefed motion to dismiss filed in order to proceed past the pleading stage and into litigation. Moreover, due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).

Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013). Maintaining class certification through trial is another over-arching risk simply puts a point on what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the Plaintiffs. Thus, the costs, risks, and delay of continued litigation are great, and weigh heavily in favor of preliminary approval.

Plaintiffs dispute the defenses it anticipates Lower will likely assert and has in fact already asserted in its Motion to Dismiss in response to Plaintiff Foster's initial complaint—but it is

obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

ii.    <u>The Settlement is Fair.</u>

The Fourth Circuit has listed four factors that a court should consider in concluding whether a proposed settlement agreement was fair and reached in good faith and without collusion: (1) the posture of the case at the time it settled; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the relevant experience of counsel. *S.C. Nat'l Bank*, 139 F.R.D. at 339 (citing *In re Jiffy Lube*, 927 F.2d at 158-159).

Here, the Settlement is the result of intensive, arm's-length negotiations through a neutral third-party mediator, and between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in these cases. Joint Dec. ¶¶ 11-15. Before discussing potential settlement, the Parties had completed an extensive investigation and exchanged information about the number of breach victims, the types of PII compromised in the breach, and Lower's investigation of, and response to, the Data Security Incident. *Id.* ¶ 9. This helped Parties fully understand the claims, defenses, and risks of continued litigation. *Id.* Moreover, Counsel entered the case with significant experience in class actions generally, and data breach class actions in particular. *Id.* ¶¶ 22-40. The final Settlement Agreement is the result of prolonged and serious arms' length negotiations between counsel for the Parties, who fought hard for the interests of their respective clients. *Id.* ¶¶ 11-15. As such, and because there are no obvious deficiencies, it meets the requirement of fairness.

**C.  The Proposed Claims Administrator Will Provide Adequate Notice.**

The court has complete discretion in determining what constitutes a reasonable notice scheme, both in terms of how notice is given and what it contains. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2006). Due process requires provision of the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. *See* Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Such Notice should be individual, where class members can be identified through reasonable effort. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974).

The Notice provided for by the Settlement Agreement is designed to be the best practicable and to meet all the criteria set forth by the Manual for Complex Litigation. *See* SA, Exs. A, B. The Notice plan provides for direct and individual notice to be provided to all Settlement Class Members via mail or email, based off of the contact information provided by the Settlement Class Members when they transacted with Lower. In addition to the individual direct notice provided, the Claims Administrator will establish and maintain a dedicated settlement website that will be updated throughout the claims period with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement and other relevant court documents. The Settlement Administrator will also maintain a toll-free telephone line and a PO Box for use by Settlement Class Members.

The notices themselves are clear and straightforward. They define the Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested service award for the class

representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel. *See* SA, Exs. A and B.

The Notice here is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement. *See e.g. Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) (finding direct mail Notice to each class members' last known address—and a second notice if the first was undeliverable—was the best practicable and satisfied notice requirements); *In re Mutual Funds Inv. Litigation,* No. MDL 1586, 2010 WL 2077972, *6 (D. Md. May 19, 2010) (approving notice via direct mail and email); *Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466 (W.D. Va. 2011) (granting final approval where notice was mailed directly to class members, and administrator maintained a class website and telephone support line).

### D.  The Court Should Appoint Class Counsel.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv). As evidenced by the Joint Declaration of Counsel, the proposed Settlement Class Counsel meets these requirements. The Court should thus appoint David K. Lietz

of Milberg Coleman Bryson Phillips Grossman PLLC, and Raina C. Borrelli of Turke & Strauss LLP as Settlement Class Counsel under Rule 23(g).

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief in the form direct reimbursements for expenses incurred and time spent relevant to the Data Incident, credit monitoring and identity theft protections. For these and the above reasons, Plaintiffs respectfully request this Court grant their Motion for Preliminary Approval of Class Action Settlement, certify the Settlement Class, and direct Notice to issue to Settlement Class Members.

Respectfully submitted,

Dated: July 17, 2023

/s/ Thomas Pacheco
Thomas Pacheco (# 21639)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
15453 Indianola Drive
Derwood, MD 20855
(t) 443.980.6119
(f) 202.686.2877
tpacheco@milberg.com

David K. Lietz (pro hac vice)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
(t) 202.744.1795
(f) 202.686.2877
dlietz@milberg.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.co

23

Samuel J. Strauss*
Raina C. Borrelli (pro hac vice)
**TURKE & STRAUSS LLP**
613 Williamson St., Suite 201
Madison, WI 53703
T: (608) 237-1775
F: (608) 509-4423
sam@turkestrauss.com
raina@turkestrauss.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2023, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

_/s/_ _____