# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

| | | |
|---|---|---|
| DALE FOSTER, DARLA SOLOMON and DAVID LEITHREN, individually and on behalf of all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:22-cv-1581 (GLR) |
| LOWER, LLC, | ) ) | |
| Defendant. | ) ) ) | |

| | | |
|---|---|---|
| EDGAR WOLFF, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:22-cv-02003-JKB |
| LOWER, LLC, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     INCORPORATION BY REFERENCE ............................................................... 3

III.    THE PROPOSED SETTLEMENT ..................................................................... 3

   A.   The Settlement Class. ...................................................................................... 3

   B.   Settlement Benefits. ......................................................................................... 3

      1.   Compensation for Lost Time and Ordinary Expenses. ................................ 4

      2.   Compensation for Extraordinary Expenses. ................................................ 4

      3.   Credit Monitoring. ....................................................................................... 5

      4.   $100 Cash Compensation (Alternative Cash Payment): ............................ 5

   C.   Service Award, Fees, and Costs. ..................................................................... 5

   D.   Notice and Claims Process. .............................................................................. 6

      1.   CAFA Notice. ............................................................................................... 6

      2.   Direct Mail Notice. ...................................................................................... 6

      3.   Settlement Post Office Box, Website, Toll-Free Number, and Email Address. ........... 7

      4.   Claims. ......................................................................................................... 8

      5.   Requests for Exclusion and Objections. ...................................................... 9

IV.    PRELIMINARY APPROVAL ............................................................................ 9

V.     LEGAL STANDARD .......................................................................................... 10

VI.    ARGUMENT ....................................................................................................... 12

   A.   The Claims and Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Federal Rule of Civil Procedure 23 and Due Process. ......................................................................................................... 12

   B.   The Settlement Class Should be Finally Certified for Settlement Purposes. .................. 14

   C.   The Settlement is Fair, Reasonable, and Adequate and Should Be Approved. ............... 14

        1.    The Terms of the Settlement Warrant Final Approval under the *Jiffy Lube* Test. ...... 14

        2.    The Settlement Terms Meet the *Jiffy Lube* Adequacy Requirement........................... 15

        3.    The Settlement Terms Meet the *Jiffy Lube* Fairness Requirement. ........................... 19

VII.      CONCLUSION.............................................................................................................. 20

# I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e)(2) ("Rule 23") and this Court's July 27, 2023 Order Granting Preliminary Approval of Class Action Settlement ("Prelim. Approval Order"), Plaintiffs Dale Foster, Darla Solomon, David Leithren, and Edgar Wolff, individually and on behalf of all others similarly situated, respectfully seek final approval of their class action Settlement[1] with Defendant Lower, LLC, ("Lower," and together with Plaintiffs, the "Parties"). *See* Fed. R. Civ. P. 23(e)(2); Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Prelim. App. Order"), *Foster*, ECF No. 42. The Settlement resolves all claims against Lower on behalf of approximately 181,300 Settlement Class Members whose personally identifiable information ("PII") was potentially compromised between December 10, 2021, and December 14, 2021, in the Data Incident involving Lower's network.

Through extensive arms'-length negotiations, the Parties reached a Settlement that provides for immediate and significant benefits for the Settlement Class. *See* Joint Declaration of Plaintiffs' counsel Supporting Motion for Preliminary Approval of Class Action Settlement ("Joint MPA Decl.") at ¶¶ 12,16, *Foster*, ECF No. 41-3. The Settlement is the result of hard-fought negotiations between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each Party's claims and defenses. *See id.* ¶¶ 11-19. If approved, the Settlement will provide Settlement Class Members with the precise relief this lawsuit was filed to obtain.

Specifically, the Settlement negotiated on behalf of the class provides for four significant, meaningful categories of relief from the $1,425,000 non-reversionary settlement fund: (1)

---

[1] Unless otherwise indicated, capitalized terms used in this Memorandum have the same meanings as in the Class Action Settlement Agreement and Release (the "Settlement Agreement" or "SA"). *Foster* ECF No. 41-2.

reimbursement for lost time (up to 10 hours at $20 per hour) and ordinary out-of-pocket expenses up to $2,500; (2) reimbursement for extraordinary losses up to $7,500; (3) two-year membership of 3B credit monitoring services with at least $1 million in fraud protection for those Settlement Class Members who submit a claim and; (4) a $100 cash benefit as an alternative to the other cash compensation offered above. Settlement Agreement ("SA") ¶ 63, *Foster*, ECF No. 41-2.

Class Counsel has zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after extensive investigation and negotiations and months of work finalizing the Settlement Agreement and associated exhibits. After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class and implemented the user-friendly claims process that the Court approved. Individual notice was provided directly to Settlement Class Members via first class mail. Notice was sent to 100% of the Settlement Class, and reached 93.5% of the Class, easily meeting Rule 23(c)(2)(B) and due process standards. *See* Declaration of Sara Rugg of Angeion Group in Connection with Final Approval of Settlement ("Angeion Decl."), ¶¶ 6-9, attached hereto as **Exhibit 1**; Fed. R. Civ. P. 23(c)(2)(B). The Notice provided each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement.

The reaction from Settlement Class Members to the Settlement is resoundingly positive. The deadline for Settlement Class Members to opt-out or object to the Settlement was November 9, 2023. Only five individuals requested exclusion from the Settlement, and there were no objections to the Settlement or Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives, filed on October 26, 2023. *See* Angeion Decl. ¶¶ 16-17. By contrast, as of November 13, 2023, 12,750 Claims have been submitted by Settlement Class Members. *See* Angeion Decl. ¶ 14 (the Claims Deadline is December 11, 2023.)

The Settlement delivers tangible, immediate benefits to Settlement Class Members addressing the potential harms of the Data Incident, without protracted and inherently risky litigation. It delivers a fair and adequate resolution for the Class and merits final approval. Accordingly, for the reasons set forth herein, Plaintiffs respectfully requests this Court grant their Unopposed Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"), as well as Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives ("Motion for Attorneys' Fees"), which was filed on October 26, 2023. *Foster*, ECF No. 43.

## II. INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement ("Memorandum in Support of Motion for Preliminary Approval"), filed on July 17, 2023 (*Foster*, ECF No. 41-1) and the accompanying exhibits filed in conjunction therewith.

## III. THE PROPOSED SETTLEMENT

### A. The Settlement Class.

The Settlement Class includes approximately 181,300 individuals and is defined as:

All persons who were sent a notice of the Data Incident by Lower, LLC identifying them as individuals potentially affected by the Data Incident.

Excluded from the Settlement Class are (a) officers, directors, and trustees of the Defendant; (b) all judges and their staff assigned to this case and any members of their immediate families; (c) the mediator; (d) the Parties' counsel in this Litigation; and € all Settlement Class Members who timely opt-out of the Settlement.

### B. Settlement Benefits.

1.    <u>Compensation for Lost Time and Ordinary Expenses.</u>

The Settlement Administrator, from the Settlement Fund, will provide compensation for unreimbursed losses, up to a total of $2,500.00 per Claimant, upon submission of an identifiable and reasonable claim and supporting documentation, such as the following losses:

    a. Out of pocket expenses incurred as a result of the Data Incident, including bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel;

    b. Fees for credit reports, credit monitoring, or other identity theft insurance product purchased between December 2021 and the date of the close of the Claims Period;

    c. Up to 10 hours of lost time, at $20/hour for time spent dealing with the Data Incident. Class members may submit claims for up to ten (10) hours of lost time with an attestation that they spent the claimed time responding to issues raised by the Data Incident.

2.    <u>Compensation for Extraordinary Expenses.</u>

The Settlement Administrator, from the Settlement Fund, will provide compensation, up to a total of $7,500 per Claimant, upon submission of a claim and supporting documentation, for unreimbursed extraordinary losses incurred as a result of the Data Incident, if:

    a. The loss is an actual, documented, and unreimbursed monetary loss;

    b. The loss was more likely than not caused by the Data Incident;

    c. The loss occurred between December 2021 and the Claim Deadline; and

d.  The loss is not already covered by the ordinary losses category; and the settlement class member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

3.  Credit Monitoring.

The Settlement Administrator, from the Settlement Fund, will pay the cost of credit monitoring services for Settlement Class Members who submit a claim for a 2-year membership of 3B credit monitoring with at least $1 million in fraud protection.

4.  $100 Cash Compensation (Alternative Cash Payment):

Settlement Class Members can elect to make a claim for a $100 Cash Payment in lieu of the settlement benefits outlined in Paragraph 63(i)-(iii). To receive this benefit, Settlement Class Members must submit a valid claim form, but no documentation is required to make a claim. The amount of the Cash Payment will be increased or decreased on a pro rata basis, depending upon the number of valid claims filed and the amount of funds available for these payments.

**C. Service Award, Fees, and Costs.**

The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service award to Representative Plaintiffs until after the substantive terms of the settlement had been agreed upon, other than that Defendant would pay reasonable attorneys' fees, costs, expenses, and service awards to Representative Plaintiffs as may be agreed to by Defendant and Proposed Settlement Class Counsel and/or as ordered by the Court.

The Settlement Agreement calls for a reasonable service award to Representative Plaintiffs in the amount of $2,500 per Plaintiff, for a total payment of $10,000. The attorneys' fees and expenses sought will not exceed $485,000, subject to approval of the Court. The service award, as

well as attorneys' fees and costs, were negotiated after the total amount of the Settlement Fund was established and will be paid from the non-reversionary Settlement Fund.

Class Counsel filed their Motion for Attorneys' Fees with the Court on October 26, 2023— 14 days prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement.

**D. Notice and Claims Process.**

The Parties agreed to use Angeion Group ("Angeion") as the Settlement Administrator. The Settlement Fund amount provided by Lower will pay the entirety of the Administration Expenses, including the cost of notice.

    1.    <u>CAFA Notice.</u>

Angeion began its work by providing notice of the proposed Settlement pursuant to the Class Action Fairness Act 28 U.S.C. §1715(b) ("the CAFA Notice"). Angeion Decl. ¶ 4. At Lower's counsel's direction, on July 27, 2023, Angeion sent the CAFA Notice,[2] via First-Class Certified Mail, to (i) the Attorney General of all states and territories, as well as the Attorney General of the United States. *Id.*

    2.    <u>Direct Mail Notice.</u>

Angeion received a data file from Lower on July 31, 2023. *Id.* ¶ 5. The file contained 181,300 names, and last known mailing addresses. *Id.* The file also contained 82,683 email records. *Id.* Angeion undertook several steps to review the records that were provided and compiled the Class List. *Id.* To ensure that the Notice of Proposed Settlement (in Postcard format) would be deliverable to Settlement Class Members, Angeion also ran the Class List through the

---

[2] A copy of the CAFA Notice is attached hereto as Exhibit A to Angeion's Declaration.

USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id.* ¶ 6.

On September 11, 2023, Angeion caused 181,300 copies of the Notice of Proposed Settlement to be mailed to the Settlement Class and the Settlement Subclass via First Class Mail.[3] *Id.* ¶ 7. As of November 13, 2023, the U.S. Postal Service ("USPS") has informed Angeion that 894 copies of the Notice of Proposed Settlement were returned by the USPS with a forwarding address. *Id.* ¶ 8. These notices were re-mailed by Angeion to the updated address. *Id*. As of November 13, 2023, 12,634 copies of the notices were returned by the USPS as undeliverable as addressed without a forwarding address. *Id.* ¶ 9. Angeion conducted address verification searches on the 12,634, which produced 913 updated addresses. *Id.* Angeion has remailed, or is in the process of re-mailing, a copy of the Notice of Proposed Settlement to the 913 updated addresses obtained from the advance address search. *Id*. Of the re-mailed Notices, none have been returned by USPS a second time. *Id*.

3.  <u>Settlement Post Office Box, Website, Toll-Free Number, and Email Address.</u>

In addition to the individual direct notice provided, the Claims and Settlement Administrator created a dedicated settlement website, [www.lowerdataincidentsettlement.com](http://www.lowerdataincidentsettlement.com). *Id.* ¶ 10. The Settlement Website "went live" on September 11, 2023, and contains details of the Settlement, including the Settlement benefits, contact information for Class Counsel, how to calculate and make a claim, and the procedure for how to opt out of or object to the Settlement, Frequently Asked Questions, all related Court-documents, a copy of the Long Form Notice.[4] *Id*.

---

[3] A copy of the Notice of Proposed Settlement is attached to the Angeion's Declaration as Exhibit C.

[4] A copy of the Long Form Notice is attached hereto as Exhibit 1-D.

The Settlement Website provides Settlement Class Members with the opportunity to file Claim Forms online as well as downloadable versions of the claim form. *Id*. As of November 13, 2023, the Settlement Website received 14,303 unique visitors and 45,166 page views. *Id.* ¶ 11. The Settlement Website will remain active for at least six months after the Effective Date of the Settlement.

The Claims and Settlement Administrator also established a toll-free help line ("Toll-Free Number"), with an Interactive Voice Response ("IVR") system, to provide Settlement Class Members with additional information about the settlement, which is available 24 hours per day, seven days per week. *Id.* ¶ 12. Settlement Class Members can call and interact with the IVR system which provides important settlement information and offers the ability to leave a voicemail message to address specific requests or issues. *Id.* As of November 13, 2023, the IVR has received 1,865 calls for a total of 9,333 minutes. *Id.* ¶ 13.

Finally, the Claims and Settlement Administrator established a designated P.O. Box to receive requests for exclusion, claims forms, objections, and correspondence from Settlement Class Members. *See Id.* Exs. C-D. The P.O. Box address appears prominently in all Notices and in multiple locations on the Settlement Website.

4.    Claims.

The timing of the claims process was structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. As of November 13, 2023, Angeion received 12,570 timely filed claims. *Id.* ¶ 14. Class Members have until December 11, 2023, to file claims. Angeion is still in the process of reviewing and validating claim forms. *Id.* Angeion will provide

a final claims report to the Parties once it processes all Claim Forms received by the deadline for Settlement Class Members to submit claims.

5. <u>Requests for Exclusion and Objections.</u>

Settlement Class Members were provided up to and including November 9, 2023—sixty days after the Notice Deadline—to object to or to request exclusion from the Settlement. Prelim. Approval Order, ¶ 10 (*Foster*, ECF No. 42). Similar to the timing of the Claims Process, the timing with regard to objections and requests for exclusion was structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, which was filed fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement. *Foster*, ECF 43. As of November 13, 2023, Angeion has received only five (5) timely exclusion requests and no objections to the Settlement. *Id*. ¶ 16.

IV. **PRELIMINARY APPROVAL**

Plaintiffs filed the Motion for Preliminary Approval on July 17, 2023, and the Court entered the Preliminary Approval order on July 27, 2023. *Foster*, ECF No. 41,42. In the Court's Preliminary Approval Order, the Court appointed Plaintiffs Dale Foster, Darla Solomon, David Leithren, and Edgar Wolff as Settlement Class Representatives pursuant to Rule 23(e)(2)(A) and David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC and Raina C. Borrelli of Turke & Strauss LLP as Settlement Class Counsel. Rule 23(e)(2)(A); Prelim. Approval Order ¶ 2. The Court also appointed Angeion Group as the Claims and Settlement Administrator. *Id.* ¶ 6. The Court further approved the forms of notice, which state the amount of attorneys' fees that would be requested, the fact that costs and expenses would be requested, the amount of service awards that would be requested, as well as approved the plan for disseminating notice to the Class. *Id.* ¶¶

7-8; SA Exs. A-B. Class Members also had until November 9, 2023, to file requests for exclusions and objections, if any. Prelim. Approval Order, ¶¶ 10-11, 17. Class Members also have until December 11, 2023, to make claims. *Id.* ¶ 17. Class Counsel submitted a separate Motion for Attorneys' Fees, filed on October 26, 2023—the Court-ordered deadline to do so. *Id*. In the Court's July 27, 202, Preliminary Approval Order, the Court scheduled the Final Approval Hearing in the lawsuit for December 1, 2023, at 10:30 a.m., at which the Court will determine whether to finally certify the Action, finally approve the Settlement and Settlement Agreement, grant Plaintiffs' Motion for Attorneys' Fees, dismiss the Lawsuits with prejudice, and enter the final approval order and judgment. *Foster*, ECF No. 42.

## V.    LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Fed. R. Civ. P. 23(e). "Federal Rule 23(e) has been applied and analyzed thoroughly in reported decisions of Maryland's federal district courts and the Fourth Circuit, as well as nationally." *Shenker v. Polage*, 130 A.3d 1171, 1178-79, 226 Md. App. 670, 683 (2016) (citing *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015)); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir.1991); *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir.1975); *In re Mid–Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983); *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. 305 (D. Md. 1979).

The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *Manual for Complex Litigation (Fourth)* ("MCL"), § 21.632 (4th ed. 2004). The approval process involves two steps. At the first, or preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval" and warrants notice being issued to the class. *Horton v. Merrill Lynch, Pierce, Fenner*

*& Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)). This first step involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.*; *see also See Manual for Complex Litigation*, Sec. 30.41 (3d ed. 1995). It is only after a court has preliminarily approved a settlement, and notice has been provided to the Class, that the court makes a final determination of the fairness, adequacy, and reasonableness of a Settlement.

The primary concern for a court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d t 158-59. Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). However, "there is a strong initial presumption that the compromise is fair and reasonable." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D. S.C. 1991).

Moreover, as the Fourth Circuit has recognized, courts strongly favor and encourage settlements. *See, e.g., United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). "This is particularly true in class actions" and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Six v. LoanCare, LLC*, Case No. 5:21-cv-00451, 2022 WL 16747291, at *3 (S.D. W. Va. Nov. 7, 2022) (slip copy) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) and citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998 (noting the "strong judicial policy in factor of settlements, particularly in the class action context")).

Plaintiffs now ask this Court to grant final approval of the proposed Settlement as fair, adequate, and reasonable so that Plaintiffs and Settlement Class Members may begin to appreciate the monetary and non-monetary benefits of the Settlement.

## VI.    ARGUMENT

### A. The Claims and Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Federal Rule of Civil Procedure 23 and Due Process.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> (i) clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Here, the direct mail Notice of Proposed Settlement (in Postcard format) is the gold standard and is consistent with Notice programs approved by other courts. *See, e.g., Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) (approving notice where

individual direct notice mailed by fourth-class mail and settlement website and toll-free number established); *Smith v. Res-Care, Inc.*, Civil Action No. 3:13-5211, 2015 WL 6479658, at *4 (S.D. W. Va. Oct. 27, 2015) (approving notice where individual direct notice mailed and settlement website and toll-free number established); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) (finding direct mail Notice to each class members' last known address—and a second notice if the first was undeliverable—was the best practicable and satisfied notice requirements). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney, that the court will exclude any class member who requests exclusion, and the binding effect of final approval and class judgment. *See* SA Exs. A-B; *Foster*, ECF 41-2; Angeion Decl Exs. B-C. The Notice utilized clear and concise language that is easy to understand, and the Notice was organized in a way that allowed Settlement Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate.

Moreover, the Settlement Administrator—with the assistance of the Parties—has taken all necessary measures to ensure notice reached as many of the Settlement Class Members as possible. Direct notice was sent to 100% of the Settlement Class Members, reaching 93.5% of the Settlement Class. Angeion Decl. ¶¶ 7-9. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with (and well above) Notice Programs approved in the Fourth Circuit and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., "Managing Class Action Litigation: A Pocket Guide or Judges", 27 (3d Ed. 2010); *Smith*, Civil Action No. 3:13-5211, 2015 WL 6479658, at *5 (approving a "92.13% effective delivery rate to identified Class Members" as

an "acceptable, and event exceptional, rate"); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving publication notice rate of approximately 80% of the U.S. population where Settlement Class Members were exposed to notice an average of 2.6 times throughout notice program); *Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 906 (8th Cir. 2018) (approving notice that reached 73.7% of class members); *In re Lupron Marketing & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005) (approving notice that was projected to reach 80% of class members); *Cicciarella v. Califia Farms, LLC*, No. 7:19-cv-08785, 2020 WL 1320866 (S.D.N.Y. 2020) (approving notice that was projected to reach 70% of class members).

### B. The Settlement Class Should be Finally Certified for Settlement Purposes.

As Plaintiffs set forth at length in their Motion for Preliminary Approval, the proposed Settlement Class satisfies all of the requirements of Rule 23. *See* Fed. R. Civ. P. 23(a), (b)(3). The Court preliminarily certified the Settlement Class in its Preliminary Approval Order. Prelim. Approval Order, *Foster*, ECF 42, ¶ 3. Nothing has occurred that would change the Court's previous determination that Plaintiffs satisfy the requirements under Rule 23. Fed. R. Civ. P. 23(a), (b)(3). Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rule 23(a) and (b)(3). *Id.* Thus, the Court should finally certify the Settlement Class for settlement purposes.

### C. The Settlement is Fair, Reasonable, and Adequate and Should Be Approved.

1.     The Terms of the Settlement Warrant Final Approval under the *Jiffy Lube* Test.

The Fourth Circuit has developed a two-part analysis in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir.1991) to determining whether to grant final approval of a class action settlement: (1) adequacy—whether the class recovery is adequate in comparison to what the class gives up;

and (2) fairness—whether the procedure by which the settlement was negotiated was proper.[5] *See In re Jiffy Lube*, 927 F.2d at 159; *Clark*, No. 8:00–1217–22, 2004 WL 256433, at \*5.

2. The Settlement Terms Meet the *Jiffy Lube* Adequacy Requirement.

In analyzing the adequacy of a proposed settlement, the Court should consider the *Jiffy Lube* factors: (1) the relative strength of the case on the merits; (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *See id.* at 159; *Clark*, No. 8:00–1217–22, 2004 WL 256433, at \*5.

a. *The Relative Strength of the Case on the Merits, the Risks of the Case if the Case Were to Go to Trial, and the Duration and Expense of Additional Litigation Weigh in Favor of Final Approval.*

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *See S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D. S.C. 1990) (noting that settlement spares litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources). Here, the first three *Jiffy Lube* factors are closely related, and weigh in favor of final approval of the proposed settlement.

---

[5] "In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." *Skochin v. Genworth Fin., Inc.*, Civil Action No. 3:19-cv-49, 2020 WL 6697418, at \*2 (E.D. Va. 2020) (slip copy); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) ("[B]ecause our factors for assessing class action settlement almost completely overlap with the new Rule 23(e)(2) factors, the outcome … would be the same under both our factors and the Rule's factors."); *see also Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*, Civil Action No. ELH-21-1520, 2023 WL 185178, at \*4 (D. Md. Jan. 13, 2023) (same) (granting final approval after evaluating adequacy and fairness of settlement under *Jiffy Lube* factors).

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs believe their case is strong, there would be substantial risk in litigating the case. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.") ("This field of litigation is evolving; there is no guarantee of the ultimate result."). This case is no exception to that rule. It involves 181,300 class members, complicated and technical facts, and a well-funded and motivated defendant.

There are numerous substantial hurdles Plaintiffs would have to overcome before the Court might find a trial appropriate, including a motion to dismiss, class certification, and summary judgment. Like any complex class action, data breach cases are challenging and time consuming to litigate, particularly here, where Lower disputes Plaintiffs' allegations and denies that it is liable for any harm caused to Plaintiffs from the Data Incident. Lower has indicated it will vigorously defend the case. While Plaintiffs believe their claims are strong,  success is not guaranteed. Thus, despite Plaintiffs' confidence in the strength of this case, numerous legal issues and factual disputes exist that undermine the certainty of a more favorable outcome for the Settlement Class.

Rather than face this risk and uncertainty, the Settlement allows for Settlement Class Members to obtain benefits within the near future—as opposed to potentially waiting for years— and eliminates the possibility of receiving no benefits whatsoever. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to

litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact …. That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."). Resolution in the near-term also helps mitigate any harm that the Settlement Class Members may have suffered by providing access to credit monitoring benefits in the near-term, rather than after prolonged litigation.

Litigating this case to a favorable conclusion will require a considerable amount of time and resources, and weighs in favor of accepting the Settlement now. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (internal citation omitted)).

Here, the monetary and non-monetary relief provided for in the Settlement represents a significant and excellent result for the Settlement Class: (1); ordinary expense reimbursements up to $2,500 per person; (2) extraordinary expense reimbursements up to $7,500 per person; (3) two-years of 3B credit monitoring services with at least $1 million in fraud protection for Settlement Class Members who submit a claim; and (4) a $100 alternative cash payment in lieu of the previous settlement benefits outlined above. SA ¶ 63. Finally, the estimated costs of notice and claims administration through completion of the action and attorneys' fees ($475,000) are also benefits to the Settlement Class.

Based upon all this relief, this is a sizeable recovery for the Settlement Class and represents real, meaningful benefits for Settlement Class Members.[6] The Settlement provides benefits that

---

[6] These Settlement terms are consistent with, and in fact better than, agreements approved by Courts

address all potential harms of a data breach without the substantial risks, uncertainties, and duration and expense of continued litigation. Accordingly, the Settlement easily weighs in favor of final approval.

           *b. The Solvency of Lower on a Litigated Judgment is Neutral and Does Not Preclude Final Approval.*

There is no evidence that Lower is in danger of becoming insolvent in the likelihood of a recovery in Plaintiffs' favor on a litigated judgment. Thus, this factor is neutral in the analysis and does not preclude the Court from granting final approval.

           c. *The Degree of Opposition to the Proposed Settlement.*

The reaction of the Settlement Class reaction to the proposed Settlement has been undeniably positive. As of November 13, 2023, out of the 169,579 Settlement Class Members who received notice, Angeion received only five (5) timely exclusion requests and no objections to the Settlement. Angeion Decl. ¶¶ 9,16. Moreover, as of November 13, 2023, Angeion has received no objections to the Settlement. *Id*. ¶17. The opt-outs do not undercut the conclusion that the Settlement satisfies the adequacy requirement. *See Skochin v. Genworth Fin., Inc.*, Civil Action

---

in other, similar data breach cases. *See, e.g., Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements;); *Baksh v. IvyRehab Network, Inc*., No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge, et al. v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Linnins v. HAECO Ams., Inc.*, No. 16-cv-486, 2018 WL 5312193, at *1-3 (M.D.N.C. Oct. 26, 2018) (settlement included $312,500 claim fund for reimbursement of specified expenses to employees whose PII was alleged disclosed in breach).

No. 3:19-cv-49, 2020 WL 6697418, at *4 (E.D. Va. 2020) (holding that proposed settlement satisfied adequacy requirement sufficient for granting final approval where 191 opt outs and 32 objections out of class of 207,000 (which translates to an opt-out rate of .09227% and objection rate of .01545%). "'It is well established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" *West v. Continental Automotive, Inc.*, Docket No. 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *6 (W.D. N.C. Feb. 5, 2018)) (quoting *National Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases)). Thus, the presumption in favor of final approval applies here with only one, withdrawn objection to the Settlement.

### 3. The Settlement Terms Meet the *Jiffy Lube* Fairness Requirement.

The Fourth Circuit has listed four factors that a court should consider in concluding whether a proposed settlement agreement is fair, and reached in good faith and without collusion: (1) the posture of the case at the time it settled; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the relevant experience of counsel. *S.C. Nat'l Bank*, 139 F.R.D. at 339, *citing In re Jiffy Lube*, 927 F.2d 1at 158-159.

"A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations." *Harris v. McCrackin*, C.A. Nos. 2:03–3845–23, 2:03–3943–23, 2:04–2314–23, 2006 WL 1897038, at *5 (D. S.C. July 10, 2006); *see also ADESSO Homeowners' Ass'n v. Holder Properties, Inc.*, Case No. 3:16-cv-710-JFA, 2017 WL 11272589, at *8 (D. S.C. May 23, 2017) ("[A] proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations.").

This presumption is applicable here.

Here, the Settlement is the result of protracted and intense, arm's-length negotiations between highly experienced attorneys who are familiar with class action litigation—and data breach class actions in particular—and with the legal and factual issues in these cases. *See* Joint MPA Decl. ¶¶ 6-40 and Firm Resumes attached thereto as Exhibits A and B. Before discussing potential settlement, the Parties completed an extensive investigation and exchanged informal discovery—both of which helped them to fully understand the strengths and weaknesses of their claims and defenses and the risks of continued litigation. *Id.* ¶¶6, 9. The Parties then participated in a full day of mediation with Hon. Wayne Andersen (Ret.) of JAMS, negotiating at arm's length and communicating their positions through him. *Id.* ¶ 12. This session with Judge Anderson resulted in an agreement to the principal terms of the Settlement. *Id.* ¶ 13. Following their mediation session, the Parties continued negotiating back and forth for weeks before reaching the particular terms of the Settlement Agreement and associated exhibits. *Id.* ¶ 14. Throughout all negotiations, Settlement Class Counsel and counsel for Lower fought hard for the interests of their respective clients. *Id.* ¶ 13. As such, because there is no collusion, the Settlement meets the requirement of fairness.

Accordingly, the Settlement satisfies the *Jiffy Lube* test for fairness and adequacy, and the Settlement should therefore be finally approved by the Court.

## VII.   CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members substantial, immediate relief in the form of direct reimbursements for expenses incurred and time spent relevant to the Data Incident, and credit monitoring and identity theft protections. For these and the above reasons, Plaintiffs respectfully request this Court grant

their Motion for Final Approval of the Class Action Settlement, finally certify the Settlement Class, and determine that the Notice met the requirements of Rule 23(c)(2)(B) and due process.[7]

Dated: November 17, 2023           TURKE & STRAUSS LLP

By:  */s/ Raina C. Borrelli*
    Raina C. Borrelli (*pro hac vice*)
    Samuel J. Strauss (*pro hac vice*)
    raina@turkestrauss.com
    sam@turkestrauss.com
    TURKE & STRAUSS LLP
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone (608) 237-1775
    Facsimile: (608) 509-4423

    Thomas Pacheco (# 21639)
    MILBERG COLEMAN BRYSON
    PHILLIPS GROSSMAN, PLLC
    15453 Indianola Drive
    Derwood, MD 20855
    (t) 443.980.6119
    (f) 202.686.2877
    tpacheco@milberg.com

    David K. Lietz (*pro hac vice*)
    MILBERG COLEMAN BRYSON
    PHILLIPS GROSSMAN, PLLC
    5335 Wisconsin Avenue NW, Suite 440
    Washington, D.C. 20015-2052
    (t) 202.744.1795
    (f) 202.686.2877
    dlietz@milberg.com

    *Attorneys for Plaintiffs and the Settlement Class*

---

[7] A [Proposed] Final Judgment Approving Class Action Settlement is attached hereto as **Exhibit 2.**

<u>**CERTIFICATE OF SERVICE**</u>

I, Raina C. Borrelli, hereby certify that on November 17, 2023, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record via the ECF system.

DATED this 17th day of November, 2023.

TURKE & STRAUSS LLP

By: */s/ Raina C. Borrelli*
Raina C. Borrelli
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423